IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| LISA C., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Case No. 7:24-cv-00133-BT |
| COMMISSIONER, SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
|     Defendant. | § | |

## **MEMORANDUM OPINION & ORDER**

Before the Court is Plaintiff Lisa C.'s[1] civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social Security. For the reasons explained below, the Court AFFIRMS the Commissioner's decision.

## **Background**

Plaintiff alleges that she is disabled due to rheumatoid arthritis, high blood pressure, high cholesterol, anxiety, and depression. Admin R. 219 (ECF No. 10-1).[2] Plaintiff was born on March 31, 1966, and has a high school education. Admin. R. 169, 220. She has past relevant work experience as a fast-food manager, home attendant, and nurse assistant. Admin R. 27.

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018, Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Citations to the record refer to the CM/ECF page numbers at the top of each page rather than page numbers at the bottom of each filing.

Plaintiff applied for disability insurance benefits under Title II of the Social Security Act on January 31, 2022, alleging a disability onset date of April 1, 2021. Admin. R. 169. Her claim was denied initially and on reconsideration. Admin R. 95, 103. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge (ALJ), who conducted a telephonic administrative hearing on May 1, 2023. *See* Admin R. 33-63.

After hearing testimony from Plaintiff and a Vocational Expert (VE), the ALJ found that Plaintiff was not disabled and thus not entitled to benefits under the Act. Admin R. 27-28. Utilizing the five-step sequential evaluation process,[3] the ALJ first found that Plaintiff has not engaged in substantial gainful activity since April 1, 2021. Admin R. 20.

At the second step, the ALJ determined that Plaintiff suffered from the severe impairments of right-hand arthritis, right knee bone cyst, lumbar

---

[3] "In evaluating a disability claim, the [ALJ] conducts a five-step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue,* 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the initial burden of establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ to show that there is other substantial work in the national economy that the plaintiff can perform. *Id.* at 448; *Copeland v. Colvin,* 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland,* 771 F.3d at 923 (citing *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen,* 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler,* 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

degenerative disc disease, and obesity. Admin R. 21. He found Plaintiff's "medically determinable mental impairments of depression and anxiety" were not severe, as they "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities," she "is prescribed medications and has noted improved mood symptoms even with a 'small 25mg dose,'" and "[m]ental status exams have been consistently benign with the claimant exhibiting normal mood and behavior. . . ." Admin R. 21.

At the third step, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment in appendix 1 of the social security regulations. Admin R. 23.

Before proceeding to the fourth step, the ALJ found that Plaintiff retained the residual functional capacity (RFC) to

> perform light work as defined in 20 CFR 404.1567(b) except the claimant can perform occasional climbing of ladders, ropes, or scaffolds; occasional pushing/pulling with the right lower extremity; crouching, crawling, and kneeling; frequent stooping and climbing of ramps and stairs; and have no exposure to extremes of occupational cold or wetness.

Admin R. 23-24.

At step four, relying on the testimony of the VE, the ALJ found that Plaintiff was capable of resuming her past relevant work as a fast-food manager, home attendant, and nurse assistant. Admin R. 26-27. Therefore, the ALJ found that

Plaintiff was not disabled as defined by the Social Security Act and was not entitled to benefits. Admin R. 27-28.

Plaintiff appealed the ALJ's decision to the Appeals Council. Admin. R. 5. The Appeals Council found that the appeal did not provide a basis for changing the ALJ's decision. Admin. R. 5-7. Plaintiff then filed this action in federal district court challenging the decision on the grounds that the ALJ erred in (i) finding at step 2 that Plaintiff's anxiety and depression were non-severe or, alternatively, failing to include limitations in the RFC finding to accommodate her mental impairments; (ii) failing to include limitations in the RFC finding to accommodate her severe physical impairment of right-hand arthritis; and (iii) formulating the RFC without the assistance of a medical opinion. Pl.'s Br. 6-14 (ECF No. 14).

## Legal Standard

The Court's "review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the [ALJ] applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Copeland*, 771 F.3d at 923 ("Substantial evidence is more than a mere scintilla and less than a preponderance.").

The ALJ, and not the courts, resolves conflicts in the evidence; the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam). Hence, the Court may not substitute its own judgment for the ALJ's, and it may affirm only on the grounds that the Commissioner stated to support her decision. *Copeland*, 771 F.3d at 923. If the Commissioner's findings are supported by substantial evidence, the findings are conclusive, and the Commissioner's decision must be affirmed. *Martinez*, 64 F.3d at 173. A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

Nevertheless, the substantial evidence review is not an uncritical "rubber stamp" and requires "more than a search for evidence supporting the [ALJ's] findings." *Hill v. Saul*, 2020 WL 6370168, at *6 (N.D. Tex. Sept. 29, 2020) (quoting *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984)), *adopted by* 2020 WL 6363878 (N.D. Tex. Oct. 29, 2020) (Lindsay, J.). The Court "must scrutinize the record and take into account whatever fairly detracts from the substantiality of the evidence supporting" the ALJ's decision. *Id.* (quoting *Martin*, 748 F.2d at 1031). A no-substantial-evidence finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Id.* (citation omitted).

## Analysis

5

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and is the product of legal error. Pl.'s Br. 6-11. She raises three arguments on appeal. First, she contends that the ALJ erred at step two of the sequential evaluation in finding her mental impairments were non-severe or, alternatively, because, in assessing her RFC, he failed to account for limitations stemming from her mental impairments. Pl.'s Br. 6. Second, she contends that the ALJ's RFC fails to account for limitations from Plaintiff's severe impairment of right-hand arthritis. Pl.'s Br. 13. Third, she argues that the ALJ failed to fully develop the record "by assessing the RFC determination without the support of a medical opinion." Pl.'s Br. 14. The Court addresses each argument in turn.

### 1. Mental Impairments

#### A. *Severity of Plaintiff's Anxiety and Depression*

Plaintiff contends that the ALJ erred at step two of the sequential evaluation process in finding her anxiety and depression were not severe, causing no more than minimal work-related limitations, and resulting in an RFC finding that does not accurately reflect all her impairments and limitations. Pl.'s Br. 6-10. The Commissioner responds that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments were non-severe. Def.'s Resp. Br. 2 (ECF No. 19). The Court agrees.

The definition of medically severe impairment at step two "has a specific—if somewhat surprising—meaning." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "Phrased in the negative, an 'impairment can be considered as not severe

only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (alteration in original) (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)). "This second step requires the claimant to make a de minimis showing." *Salmond*, 892 F.3d at 817.

As previously explained, at step two of the five-step sequential evaluation, the ALJ found that Plaintiff's "medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." Admin. R. 21.

Plaintiff contends that the ALJ incorrectly found her anxiety and depression were non-severe—citing instances in the record reflecting ongoing symptoms of her depression and anxiety and PHQ-9 and GAD-7 scores that "reflected moderate and severe symptoms," as well as her own subjective complaints—and argues that a finding of severe impairment is warranted. Pl.'s Br. 6-10. She asserts that "the ALJ improperly found that Plaintiff had 'benign mental status exams' and her 'symptoms stabilized with medications' without performing an adequate review of the overall medical evidence." Pl.'s Br. 7. Plaintiff maintains that her mental health symptoms "were not adequately addressed by the ALJ" and the ALJ's "failure to properly evaluate the evidence of record results in harmful error." Pl.'s Br. 10.

But this Court may not reweigh the evidence. *Martinez*, 64 F.3d at 174. If substantial evidence supports the ALJ's findings that Plaintiff's anxiety and depression were "non-severe," the Court must affirm. *See id.* at 173.

Here, the administrative decision reflects that the ALJ considered Plaintiff's testimony and her treatment records, which include her self-reports, diagnoses, treatment recommendations, and examination results. Admin. R. 21-27. For example, the ALJ considered the medical records from Plaintiff's February 21, 2022 appointment with her primary care provider—Jamie Walderzak, Physician Assistant (PA)—revealing that Plaintiff has been prescribed medication for her mental impairments and that her symptoms improved after she first began taking medication in January 2022. *See* Admin R. 21. And, contrary to Plaintiff's argument, the ALJ cited to Exhibit 10F—the portion of the record including all of Plaintiff's visits with PA Walderzak from January 2022 to August 2022—which generally show that Plaintiff's mental status exams were consistently unremarkable and Plaintiff generally exhibited "normal" mood and behavior. Admin R. 21-22. The ALJ also noted that Plaintiff "has not required inpatient psychiatric treatment" and "can perform chores, cook, and manage the[] household." Admin R. 22.

Further, the ALJ reviewed the "paragraph B" criteria and determined that Plaintiff had no limitation in understanding, remembering, or applying information; no limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; no limitation in adapting or

managing herself; and that the evidence does not otherwise indicate more than a minimal limitation in Plaintiff's ability to do basic work activities. Admin. R. 21-23.[4]

Having considered the ALJ's written decision and the administrative record, the Court concludes that substantial evidence supports the ALJ's findings that Plaintiff's anxiety and depression were not severe. And, the fact that other evidence in the administrative record could support a different conclusion is not sufficient to warrant remand. *See Hammond v. Barnhart*, 124 F. App'x 847, 853 (5th Cir. 2005) (holding that, even though there was "some evidence that point[ed] to a conclusion that differ[ed] from that adopted by the ALJ," there was no error because there was "far more than a scintilla of evidence in the record that could justify [the] finding that [the plaintiff's] impairments were not severe disabilities"). Accordingly, the ALJ did not err by finding Plaintiff's medically determinable mental impairments to be non-severe, and remand is not required on this issue.

---

[4] When a claimant is found to have a mental impairment, the ALJ must determine its severity by evaluating "the degree of functional loss resulting from the impairment in four separate areas deemed essential for work." *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001) (citing 20 C.F.R. § 404.1520a(b)(3)). These four functional areas, known as the "paragraph B criteria," are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). This rating process is known as "the psychiatric review technique" or the "technique." *Owen v. Astrue*, 2011 WL 588048, at *14 (N.D. Tex. Feb. 9, 2011) (Ramirez, J.) (citing SSR 96–8P, 1996 WL 374184, at *4 (S.S.A. July 2, 1996)).

Moreover, even if the ALJ's findings were not supported by substantial evidence, the error was harmless because Plaintiff has not shown that the limitations acknowledged by the ALJ due to her other impairments failed to accommodate the limitations, if any, caused by her anxiety and depression. In other words, the ALJ found Plaintiff had a severe impairment and non-severe impairments and, in determining her limitations, considered the limiting effects of all impairments, "including impairments that are not severe." Admin. R. 20 (citing 20 C.F.R. § 404.1520(e) and 20 C.F.R. § 404.1545; SSR 96-8p). Because the ALJ continued beyond step two and considered all impairments in determining the RFC, any error made at step two did not prejudice Plaintiff. *See Kneeland v. Berryhill,* 850 F.3d 749, 761 (5th Cir. 2017) (quoting *Audler v. Astrue,* 501 F.3d 446, 448 (5th Cir. 2007)) ("Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected.").

### B. *Reconciliation of Step Two and RFC Findings*

In the alternative, Plaintiff contends that the ALJ's decision is not supported by substantial evidence because he did not consider her mental impairments—which he deemed "nonsevere"—in his RFC determination. Pl.'s Br. 10-11. Specifically, Plaintiff asserts that "the ALJ failed to properly discuss why the mild limitation in concentration, persistence, or pace was not incorporated as part of the RFC." Pl.'s Br. 11. The Commissioner responds that substantial evidence supports the ALJ's decision to exclude mental limitations in the RFC. Def.'s Resp. Br. 5-6.

Residual functional capacity, or RFC, is defined as the most that a person can still do despite recognized limitations. 20 C.F.R. § 404.1545(a)(1). The RFC determination is a combined "medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988) (per curiam). An individual's RFC should be based on all the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources. 20 C.F.R. § 404.1545(a)(3) (2012); SSR 96-8p, 1996 WL 374184, at *1.

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ's RFC decision can be supported by substantial evidence even if she does not specifically discuss all the evidence that supports her decision or all the evidence that she rejected. *Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett*, 67 F.3d at 564.

For the reasons that follow, the Court holds that the ALJ did not err and substantial evidence supports his determination not to include any mental limitations in the RFC.

"The well-settled rule in this Circuit is that in making a determination as to disability, the ALJ must analyze both the disabling effect of each of the claimant's

ailments and the combined effects of all of these impairments." *Fraga v. Bowen,* 810 F.2d 1296, 1305 (5th Cir. 1987) (citation and quotation marks omitted). Thus, "[e]ven where an ALJ finds that a claimant's mental impairments are non-severe, 'the ALJ must still consider the impact of [any] non-severe mental impairments—either singly or in combination with other conditions—when he determines [the claimant's] RFC.'" *Danny R. C. v. Berryhill,* 2018 WL 4409795, at *15 (N.D. Tex. Sept. 17, 2018) (Ramirez, J.) (quoting *Gonzales v. Colvin,* 2016 WL 107843, at *5 (N.D. Tex. Jan. 11, 2016) (Fitzwater, J.)); *see* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."). "This is because even non-severe limitations may combine with other severe impairments to . . . narrow the range of work that the individual can perform." *Danny R. C.,* 2018 WL 4409795, at *15 (citation omitted).

"Courts within this district have found no legal error where an ALJ does not include mental limitations in a claimant's RFC so long as the ALJ considered the limiting effects and restrictions of all impairments in the RFC analysis, even those impairments that are non-severe." *Audrey M. D. v. Comm'r of Soc. Sec.,* 2022 WL 18356464, at *2 (N.D. Tex. Dec. 28, 2022) (Rutherford, J.) (citation omitted), *adopted by* 2023 WL 223178 (N.D. Tex. Jan. 17, 2023) (Boyle, J.). *See, e.g.,* *Mindy C. v. Kijakazi,* 2022 WL 3210357, at *5 (N.D. Tex. Aug. 9, 2022) (Hendrix, J.) (finding no legal error where the ALJ properly considered plaintiff's mental

impairments in calculating the RFC and did not include them in the RFC); *Gonzales*, 2016 WL 107843, at *6, *8 (finding no legal error where the ALJ considered mental health records, reports, and plaintiff's testimony regarding his mental impairments in his RFC analysis—but did not include any mental limitations in his RFC—because "the ALJ adequately discussed and considered the limiting effects of [Plaintiff's] mental impairments in formulating his RFC"); *Danny R. C.*, 2018 WL 4409795, at *15-16 (finding no legal error where the ALJ declined to include mental limitations in plaintiff's RFC because the ALJ's "decision reflect[ed] that he considered Plaintiff's mental functioning when performing his RFC analysis.").

In this case, although the ALJ found that Plaintiff's anxiety and depression were not severe impairments, his decision reflects that he considered Plaintiff's mental functioning when performing his RFC analysis. As previously noted, prior to formulating the RFC, the ALJ concluded at step two that Plaintiff, in addition to her severe physical impairments, suffered from the non-severe mental impairments of anxiety and depression. Admin. R. 21. Then, the ALJ analyzed Plaintiff's mental functional limitations using the "paragraph B" criteria. Admin. R. 21-23. As previously explained, the ALJ found Plaintiff had no limitation in understanding, remembering, or applying information; no limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; no limitation in adapting or managing herself; and that the

evidence does not otherwise indicate more than a minimal limitation in Plaintiff's ability to do basic work activities. Admin. R. 21-23.

In concluding that Plaintiff's mental limitations were not severe and only caused mild limitations, the ALJ considered the opinions State Agency Psychological Consultants (SAPCs) Suzanne Castro, Psy.D., and George Starrett Ed.D., LP. Both SAPCs concluded that Plaintiff did not have a severe mental health impairment and only mild limitation or no limitation in all four areas. Admin. R. 25-26. The ALJ found their opinions "persuasive" because they were supported by the medical evidence of record as a whole "which shows benign mental status exams and that the claimant's symptoms stabilized with medication." Admin. R. 26. The ALJ's discussion of these prior administrative medical findings provides further support for his RFC assessment. *See* 20 C.F.R. §§ 404.1520c, 416.920c; SSR 17-2p, 2017 WL 3928306 (State agency medical consultants "are highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the Act.").

The ALJ also explained:

The limitations identified in the "paragraph B" criteria are not a [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental [RFC] assessment used at steps 4 and 5 . . . requires a more detailed assessment.  The following [RFC] assessment reflects the degree of limitation the [ALJ] has found in the "paragraph B" mental function analysis.

Admin. R. 22-23. The ALJ further stated that, in determining Plaintiff's limitations, he considered the limiting effects of all impairments, "including impairments that are not severe." Admin. R. 20 (citations omitted).

The ALJ noted that Plaintiff's mild mental limitation does not affect her ability to work as she has demonstrated the ability "to sustain focused attention sufficiently long to permit timely and appropriate completion of tasks commonly found in the work setting such as everyday household routines"; to "work at a consistent pace until a task is completed"; and "to repeat sequences of action to achieve a goal or objective." Admin R. 22. The ALJ also noted that Plaintiff's mild mental limitation did not prevent her from working in home health—"a position that is noted to be semi-skilled"—after her alleged disability onset. Admin. R. 22. And the ALJ noted that during the hearing, Plaintiff testified she works for three hours a day and "followed the proceedings and stayed on point." Admin. R. 22.

Based on a review of the ALJ's written decision, the Court concludes that the ALJ sufficiently considered Plaintiff's mental impairments in calculating the RFC, and did not err in his decision not to include any mental limitations in the RFC.

### 2. Physical Impairments

As her second point of error, Plaintiff argues that the ALJ did not incorporate any limitations in her RFC to account for her right-hand impairment, which the ALJ found to be severe at step two. Pl.'s Br. 13.  Plaintiff asserts that the RFC "contains no manipulative limitations" and the ALJ "neglects to explain how

Plaintiff's ability to lift and carry items is affected by her right-hand impairment." Pl.'s Br. 13.

In response, the Commissioner agrees that Plaintiff's right-hand arthritis is a severe impairment but contends the RFC accommodates all her impairments. Def.'s Resp. Br. 7.

On the one hand, courts have found that when impairments are identified as severe at step two, but an RFC does not include any limitations for those impairments, the RFC in effect contradicts the step two finding. *See, e.g.*, *Spears v. Barnhart*, 284 F. Supp. 2d 477, 483 (S.D. Tex. 2002) (noting that by failing to include any limitations, the ALJ "basically contradict[ed] the fact that he found [the claimant's] impairments to be severe"); *Norman v. Astrue*, 2011 WL 2884894, at *6 (W.D. Tex. July 18, 2011) ("Similar to *Spears*, here the ALJ did not include any limitations resulting from the [impairment], contradicting his own finding that the [impairment] was 'severe.'"). Some federal court in Texas have held that such an inconsistency warrants remand. *See, e.g.*, *Spears*, 284 F. Supp. 2d at 483-84 (finding the ALJ's failure to address the claimant's limitations related to her severe impairment was error that warranted remand); *Norman*, 2011 WL 2884894, at *6 (finding remand was warranted where the ALJ found the claimant's limitation was severe at step two, but failed to include any limitation resulting from the impairment in his RFC analysis).

On the other hand, "several Texas federal courts have found that an ALJ does not err solely by finding an impairment severe at step two and failing to attribute

any limitation to that impairment in his RFC assessment." *Walker v. Colvin*, 2015 WL 5836263, at *15 (N.D. Tex. Sept. 30, 2015) (Ramirez, J.) (collecting cases and discussing the split in authority among Texas federal courts on this issue). The Fifth Circuit has held "[t]he ALJ's finding that [the plaintiff] had 'a combination of impairments that is severe' did not foreclose a finding that [the plaintiff] had a residual functional capacity to perform a range of light work[] and is not necessarily inconsistent with that finding." *See Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001) (quoting 20 C.F.R. § 404.1520a(c)(2))[5]*; see also Gutierrez v. Barnhart*, 2005 WL 1994289, at *9 (5th Cir. Aug. 19, 2005) (per curiam) ("A claimant is not entitled to Social Security disability benefits merely upon a showing that (s)he has a severe disability. Rather, the disability must make it so the claimant cannot work to entitle the claimant to disability benefits."); *Rivera v. Comm'r of Soc. Sec.*, 2021 WL 7906837, at *1 (E.D. Tex. Nov. 22, 2021) (citing *Walker*, 2015 WL 5836263, at *15) ("[A] court may find that an impairment is severe; however, that does not necessarily mean that the impairment must result in limitations in the RFC."); *Quigley v. Astrue*, 2010 WL 5557500, at *8 (N.D. Tex. Sept. 8, 2010) (noting that step two and the RFC determination are different inquiries), *adopted by* 2011 WL 61630 (N.D. Tex. Jan. 5, 2011).

---

[5] In *Spears, supra*, the court found that "[t]he ALJ, however, did not include any limitations—basically contradicting the fact that he found her impairments to be severe." *Spears*, 284 F. Supp. 2d at 483. *Spears* does not cite any authority for this proposition. As explained in *Boyd*, a finding of severity at step two does not preclude a finding at step five that a claimant can still work, despite the severe impairment. *See Boyd*, 239 F.3d at 706.

To determine whether an ALJ erred in finding severe impairments at step two and not attributing any limitation to those impairments in the RFC assessment, the Court must decide whether the ALJ considered the limitations that were encompassed by the severe impairments or accounted for the limitations in some respect before making a disability finding. *See, e.g.*, *Gonzalez v. Colvin*, 2014 WL 61171, at *6-7 (N.D. Tex. Jan. 6, 2014) (finding the ALJ's decision was not subject to reversal where he did not set forth specific limitations in his RFC determination relating only to the claimant's severe impairment but found other limitations that took into account the claimant's severe impairment); *Scott v. Colvin*, 2013 WL 6047555, at *11 (S.D. Tex. Nov. 14, 2013) (finding that the ALJ "fully addressed the impact of [the claimant's severe impairment] on her ability to do sustained work activities"); *compare Martinez v. Astrue*, 2011 WL 4128837, at *7 (N.D. Tex. Sept. 9, 2011), *adopted by* 2011 WL 4336701 (N.D. Tex. Sept. 15, 2011) ("Without some explanation in the record as to how plaintiff can suffer from a severe impairment, … [without] any limitation on plaintiff's ability to handle objects or pose other manipulative limitations … the decision cannot stand.").

Unlike in *Martinez*, however, the ALJ in this case explicitly considered Plaintiff's severe impairments of "right hand arthritis, right knee bone cyst, lumbar degenerative disc disease, and obesity" in assessing her RFC. Admin. R. 23-24.

For example, the ALJ notes that "at the hearing and throughout the record, [Plaintiff] reported that she was unable to work due to right hand arthritis, right knee bone cyst, lumbar degenerative disc disease, and obesity." Admin. R. 24. He

18

recognized Plaintiff reported "she has continued pain following a remote 2008 car accident . . . [after which] she had surgery on her hip and arm with later hardware removal." Admin R. 24. He also discussed that "[s]he noted that at times she cannot lift her right arm and stated that she does not write very well" and that she takes medication for her arm. Admin R. 24.

In addition, the ALJ stated that "[t]he medical evidence of record reveals that the claimant is diagnosed with right hand arthritis, right knee bone cyst, lumbar degenerative disc disease, and obesity." Admin. R. 25. He observed, however, that "dedicated treatment notes are sparse." Admin. R. 25. He discussed treatment notes from February 2022, stating that "X-rays of the hands showed mild degenerative changes on right thumb carpometacarpal." Admin. R. 25 (citing Ex. 2F/11). He also considered treatment notes from May 2022 where physical exams were normal with normal extremities and "claimant did not appear ill or in present distress." Admin. R. 25 (citing Ex. 4F/5). And he discussed treatment notes from August 2022, "where the claimant reported chronic fatigue, however physical exams were again benign." Admin. R. 25 (citing Exhibit 10F/50). The ALJ also observed that "medical evidence of record is silent for further treatment." Admin. R. 25.

In addition to considering treatment notes and Plaintiff's subjective complaints, the ALJ considered her activities of daily living, noting that Plaintiff "stated that she works 3 hours a day and spends the rest of the time at home"; that "she sleeps a lot"; "lives with her husband and mother-in-law"; and "[s]he noted

that she can drive." Admin. R. 24.

Notably, the ALJ made a credibility determination concerning Plaintiff's subjective complaints, stating:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; *however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record* for the reasons explained in this decision.

Admin. R. 24 (emphasis added). The ALJ explained that

> [a]s for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because treatment for the claimant's allegedly debilitating conditions has been sparse. What treatment the claimant has received has been conservative and routine with few if any recommendations for pain management, surgical intervention, inpatient care, or other more aggressive treatment options that would be expected for limitations of the degree alleged. The claimant takes only 500 mg acetaminophen for pain relief. Physical exams have been generally benign (Exhibit 2F, 10F, 4F). X-rays have also showed minimal abnormalities with the claimant exhibiting a stable benign cyst and only mild to moderate degenerative changes of the lumbar spine and mild changes of the right thumb (Exhibit 2F, 10F, 4F) . . . These factors coupled with her extensive activities of daily living that include driving, shopping, and working at substantial gainful activity levels in some instances further indicate that the claimant is not as limited as alleged.

Admin. R. 25.

This credibility finding also informs the ALJ's ultimate RFC assessment. *See, e.g.*, *Vasquez v. O'Malley*, 2024 WL 1481437, at *7 (W.D. Tex. Feb. 21, 2024), *adopted by* 2024 WL 1195558 (W.D. Tex. Mar. 19, 2024), *aff'd*, 2024 WL 4381269 (5th Cir. Oct. 3, 2024) (ALJ did not err in finding severe digestive impairments at step two and not attributing any limitation to those impairments in the RFC

assessment where he considered medical evidence and Plaintiff's testimony, but found the statements "concerning the intensity, persistence, and limiting effects of these symptoms not entirely consistent with the medical evidence and other evidence in the record").

And, "despite these inconsistences," the ALJ stated that "in recognition of her combined impairments," he "reduced her residual functioning capacity to a range of light exertion with additional notations regarding the use of the right lower extremity, postural limitations, and notations regarding exposure to temperature extremes as such conditions can exacerbate her symptoms." Admin. R. 25.

The ALJ further supported his assessment of Plaintiff's musculoskeletal impairments, including her right thumb arthritis, in his RFC analysis when he discussed the prior administrative medical findings of the state agency medical consultant (SAMC) Karine Lancaster, M.D.:

> The State agency physician Karine Lancaster, M.D. found the claimant to be capable of a range of medium exertion noting that she could occasionally climb ladders, ropes, and scaffolds and frequently perform all other postural movements (Exhibit 1A). These findings are not persuasive. A review of the record as a whole indicates that *due to her combined musculoskeletal condition and obesity* the claimant is more limited than as assessed and that a light residual functioning capacity is better supported.

Admin. R. 26.

The ALJ's decision sufficiently shows that he considered Plaintiff's right-thumb arthritis in the RFC determination despite not specifically identifying a

limitation that was solely attributable to it. Therefore, the Court rejects Plaintiff's contention that the ALJ erred in not attributing specific limitations to her severe impairment of right-thumb arthritis.[6] *Jordan*, 2021 WL 2255879, at *4-5 (finding no error where the ALJ expressly considered the severe impairment when assessing the RFC and additionally noted that "the objective evidence did not support implementing any greater limitations as [plaintiff's] subjective statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible").

### 3. No *Ripley* Error

Finally, Plaintiff argues the RFC is not supported by medical opinions and, therefore, the ALJ failed to develop the record, and his decision is not supported by substantial evidence. Pl.'s Br. 13-14. An ALJ's RFC determination, however, need not mirror a medical professional's assessment.

---

[6] Plaintiff's reliance on *Campbell v. Berryhill* is misplaced. *See* Pl.'s Br. 13 (citing *Campbell v. Berryhill*, 2017 WL 1102797, at *12 (N.D. Tex. Feb. 24, 2017) (Ramirez, J.), *adopted by* 2017 WL 1091651 (N.D. Tex. Mar. 23, 2017) (Godbey, J.). In that case, the court found error where "the ALJ expressly found that Plaintiff's deep vein thrombosis was one of twelve severe impairments at step two," but "provided no explanation to show that he considered the severe impairment" in the RFC analysis. Here, however, as explained directly above, the ALJ's decision sufficiently shows that he considered Plaintiff's right-thumb arthritis in the RFC determination despite not specifically identifying a limitation that was solely attributable to it. And, unlike in *Campbell*, the ALJ in this case noted that the objective evidence did not support implementing any greater limitations as Plaintiff's subjective statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible. Admin. R. 26.

In a case where the ALJ's RFC assessment did not restate any medical opinion, the Fifth Circuit noted that "[alt]hough the ALJ neither adopted the state agency report verbatim nor accepted the testimony of [a medical expert], it cannot be said that his decision was not based on substantial evidence or that he improperly applied the relevant legal standards." *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021). Moreover, the pertinent SSRs explain that an RFC assessment takes into consideration many factors, not just medical evidence. *See* SSR 96-8p, 1996 WL 374184 at *3 (July 2, 1996) (RFC is based on all the relevant evidence of an individual's abilities to do work-related activities). Further, under agency policy, even though the ALJ's RFC assessment may adopt a medical source statement, or elements of it, they are not the same. *See id.* Accordingly, an ALJ is permitted to consider the totality of the evidence in assessing a claimant's RFC.

There is no requirement that the ALJ consider or find at least one medical opinion persuasive for substantial evidence to support his RFC assessment. Nor is an ALJ required to adopt a specific physician's assessment. Instead, the ALJ is responsible for weighing all the evidence and determining a claimant's capacity for work. *See Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773 at *4 (5th Cir. Jan. 18, 2023). The Fifth Circuit also indicated that even in situations where no medical statement or opinion is present, the Court's "inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); *accord Gutierrez*, 2005 WL 1994289, at *7 ("This Court has held that the absence of a medical source statement

about a plaintiff's ability to work does not, by itself, make the record incomplete.").
The Fifth Circuit has commented that "experienced ALJs can draw their own
conclusions based on accurate medical information." *Barrett v. Berryhill*, 906
F.3d 340, 343 (5th Cir. 2018).

Here, the ALJ heard Plaintiff's testimony and description of her work
activities before and after the alleged onset date of disability, assessed her
subjective complaints and symptoms, and considered the objective medical
evidence. *See* Admin. R. 21-27. He assessed greater limitations than the SAMC,
when he found non-persuasive her finding that Plaintiff was capable of a range of
medium exertion and instead found that, because of her combined musculoskeletal
condition and obesity, she was "more limited than as assessed and that a light
residual functioning capacity is better supported." *See* Admin. R. 26. He then
determined that her symptoms were not as serious as she claimed, and he provided
a reasoned basis for the RFC finding and conclusion that Plaintiff was not disabled.
*See* Admin. R. 21-26. Contrary to Plaintiff's contentions, under Fifth Circuit
authority, the mere absence of a medical opinion does not render the record
insufficient, underdeveloped, or erroneous so long as substantial evidence
supports the ALJ's decision. *See Gutierrez*, 2005 WL 1994289, at *7.

Even if the Court were to agree that the ALJ committed a *Ripley* error,
reversal requires a showing of prejudice, which Plaintiff has not shown. She argues
only that, if she "could only use her right hand occasionally," the jobs at step four
requiring "frequent handling" would be precluded.  Pl.'s Br. 14. Plaintiff omits to

describe any other evidence and why or how that evidence would have prompted a different RFC assessment. *See Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) ("To establish prejudice, a claimant must demonstrate that he or she 'could and would have adduced evidence that might have altered the result.'" (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984))). "Mere speculation that a medical opinion could be additive to a record is not enough." *Vasquez v. O'Malley*, No. 24-50233, 2024 WL 4381269, at *2 (5th Cir. Oct. 3, 2024).

## Conclusion

Because the ALJ applied the proper legal standards and substantial evidence supports the ALJ's decision, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** this case **with prejudice**.

**SO ORDERED** on September 11, 2025.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE